CITY OF PLYMOUTH, Respondent, vs. RAILROAD COMMISSION OF WISCONSIN, Appellant.

*December 12, 1930—March 10, 1931.*

For the appellant there was a brief by the *Attorney General* and *Samuel Bryan,* assistant attorney general, and oral argument by *Mr. Bryan.*

*George L. Mooney,* city attorney of Plymouth, and *Alvin C. Reis* of Madison of counsel, for the respondent.

A brief was also filed by *Shaw, Muskat & Sullivan* of Milwaukee, attorneys for the Wisconsin Gas & Electric Company, as *amici curiæ.*

The following opinion was filed January 13, 1931:

FRITZ, J. This appeal presents at the outset the question of whether the adjudication in the case of *Wisconsin Gas & E. Co. v. Railroad Comm.,* reported in 198 Wis. 13, 222 N. W. 783, conclusively determined the respective rights of the city of Plymouth and of the Wisconsin Gas & Electric Company, in relation to which the city, on its complaint filed with the commission January 21, 1930, sought an order restraining that company from furnishing electrical service within any portion of the town of Plymouth excepting sections 5 and 6. If, by reason of the decision of the court in that case, the matter is *res adjudicata* as to those rights, then the commission's order of June 9, 1930, is proper, and the trial court should have sustained the demurrer to the complaint in this action.

In relation to the doctrine of *res adjudicata* this court has said:

"When the second action is upon a different claim or cause of action, the former judgment is only a bar as to matters actually presented and litigated therein." *Huntzicker v. Crocker,* 135 Wis. 38, 41, 115 N. W. 340.

"If the judgment in the former case does not actually decide the matters claimed to be *res adjudicata,* the question whether the issues as made up by the pleadings necessarily called for an adjudication thereon must be determined. If

they did, then the judgment may constructively be held to have adjudged the matter; but if they did not, then the former judgment is not *res adjudicata.*" *Caley v. Weyerhaeuser State Bank,* 186 Wis. 374, 378, 202 N. W. 682.

". . . In a subsequent litigation between the same parties or their privies upon a different cause of action, the judgment is only conclusive as to those issues which were in fact adjudicated. (Citations.) To ascertain what those issues were, we may examine the proceedings, or extrinsic evidence may be considered. (Finding) *Last Chance M. Co. v. Tyler M. Co.* 157 U. S. 683, 15 Sup. Ct. 733; (referee's finding) *Lumber Co. v. Buchtel,* 101 U. S. 638; (opinion) *Legrand v. Rixey's Adm'r,* 83 Va. 862, 3 S. E. 864; (evidence) *Washington G. L. Co. v. Dist. of Columbia,* 161 U. S. 316, 329, 16 Sup. Ct. 564. . . . While matters are not to be presumed to have been adjudicated on mere conjecture or possibility, unless the fact clearly appears, yet writings in judicial proceedings must have reasonable construction and their language be taken as significant. *New Orleans v. Citizens' Bank,* 167 U. S. 371, 390, 17 Sup. Ct. 905." *Grunert v. Spalding,* 104 Wis. 193, 213, 214, 80 N. W. 589.

The judicial proceedings in that former action disclose that the city of Plymouth and the Wisconsin Gas & Electric Company, as well as the Railroad Commission, were parties to that action, and presented testimony upon the merits on the hearings before the commission and the circuit court. The hearing before the commission resulted in its order of April 6, 1928, to vacate which that former action was brought. That order of April 6, 1928, was made after a hearing on the commission's motion, because the city of Plymouth had informally complained that the company had unlawfully extended its electrical lines in the town of Plymouth and was engaged in such construction beyond sections 5 and 6. The commission's order of April 6, 1928, directed the company to—

"cease and desist from rendering local electric service in the town of Plymouth, Sheboygan county, except in such

portions of the said town as the city of Plymouth shall consent to such operations by the Wisconsin Gas & Electric Company."

In the circuit court action, after first hearing testimony introduced on behalf of all of the parties (in connection with which the city could have introduced all of the proof which it claims warrants findings upon which it would be entitled to a more favorable adjudication), that court in its decision said:

"The plaintiff's [Wisconsin Gas & Electric Company] predecessors have had an indeterminate permit in the town of Plymouth since the passage of ch. 596, Laws of 1911. This indeterminate permit has never been set aside, vacated, or questioned, nor has the right of the plaintiff to operate thereunder been questioned.

"The legal existence and operation of the defendant city of Plymouth as a public utility in its proprietary capacity in the town of Plymouth is not necessary for determination and no relief is prayed for by the plaintiff against the city acting in that capacity. The prayer is to set aside and vacate the alleged unlawful order of the defendant commission.

"It is the opinion of this court that the said order of the commission is unlawful, unreasonable, and unjust.

"The order is hereby set aside and vacated as for naught."

From a judgment entered in accordance with that decision the Railroad Commission and the city of Plymouth appealed in that case as reported in 198 Wis. 13, 222 N. W. 783. On that appeal, in affirming that judgment, this court said:

"As pointed out in the decision of the trial court, the sole question at issue here is the validity of the order of the Railroad Commission ousting the plaintiff company from the town of Plymouth so far as local service is concerned."

"The defendant city can base no claim to an indeterminate permit on account of services to other customers in the town of Plymouth prior to 1917 because it required them

to come to the city limits to receive its service. It did exactly what it was necessary for it to do in order to prevent itself from becoming a public utility operating in the town of Plymouth."

"We do no more in this case than to determine as the trial court determined that the city has no such exclusive right to render utility service within the town of Plymouth as authorized the Railroad Commission to make the order of April 6, 1928."

Manifestly, the issues in that former action arose because the company was extending its lines to furnish electrical service elsewhere in the town of Plymouth than in sections 5 and 6. Those issues necessarily involved the consideration of the respective rights of the company and the city to furnish such service within that town beyond sections 5 and 6. Likewise, the adjudication in the courts necessitated the determination of whether the city, on the one hand, had the exclusive right to furnish such service throughout the town, and, on the other hand, whether the company had any right to furnish such service within the town, beyond as well as within sections 5 and 6. Consequently, as to the area involved in that action, the consideration of the rights of the parties, and the scope of the adjudication which followed, necessarily extended beyond sections 5 and 6. It was in response to that necessity, and without inadvertently or needlessly extending, in point of territory or otherwise, the scope of its adjudication further than the issues of that action necessitated, that this court, in affirming the circuit court judgment, which set aside the commission's order of April 6, 1928, advisedly and unequivocally said that "the city has no such exclusive right to render utility service within the town of Plymouth as authorized the Railroad Commission to make the order of April 6, 1928." There are no uncertainties or limitations in that adjudication which confine the effect or scope thereof to rights within merely sections 5 and 6.

In making its order of June 9, 1930, the commission rightly concluded that by reason of that former adjudication it is *res adjudicata* that the city has no exclusive indeterminate permit coextensive, in point of territory, with the geographical limits of the town of Plymouth; and the commission's order was proper in so far as it dismissed the city's complaint in the proceeding then pending. The order of the circuit court overruling the commission's demurrer to the complaint in this action must be reversed.

This case does not involve, and we are not deciding, whether the doctrine of *res adjudicata* applies to a former order of the Railroad Commission. Neither is it necessary now to determine how a local franchise or permit to a public utility is to be obtained within a town, or whether such franchise or permit is necessary to give rise to an indeterminate permit within such town. On that subject, in so far as such rights in towns are concerned, there seems to be a hiatus in the statutes. See secs. 66.06 (3) and 193.03, Stats.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order sustaining the demurrer filed by the Railroad Commission.

A motion for a rehearing was denied, with $25 costs, on March 10, 1931.